IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| OCTAVIA POTEAT,<br><br>　　　　　Plaintiff,<br><br>　　　　　v.<br><br>CP DEVELOPMENT d/b/a REGENT SQUARE RENTALS, and JAMES POLINSKY,<br><br>　　　　　Defendants. | CASE NO.: |

## COMPLAINT

AND NOW, comes Plaintiff, Octavia Poteat, by and through the undersigned counsel, J.P. Ward & Associates, LLC, and specifically, Joshua P. Ward, Esquire, who files the within Charge of Discrimination against Defendant, CP Development d/b/a Regent Square Rentals, and James Polinsky, of which the following is a statement:

## PARTIES

1.　　Plaintiff, Octavia Poteat ("Ms. Poteat" or "Plaintiff") is an adult individual who currently resides in Pittsburgh, Pennsylvania.

2.　　Defendant, CP Development d/b/a Regent Square Rentals, ("RSR") is a Domestic Business Trust located at 706 S. Trenton Avenue, Pittsburgh, Pennsylvania 15221.

3.　　Defendant, James "Jim" Polinsky ("Mr. Polinsky") is an adult individual who currently resides in Pittsburgh, Pennsylvania.

4.　　RSR and Mr. Polinsky are collectively referred to as ("Defendants").

## JURSIDICTION AND VENUE

5.　　Jurisdiction is proper as Ms. Poteat brings this Complaint under 42 U.S.C. §2000e *et seq.*, Section 1981 of the Civil Rights Act of 1866 ("Section 1981").

## FACTUAL ALLEGATIONS

6. RSR is a Property Management Company that manages apartments in the Regent Square/Wilkinsburg area of Pittsburgh, Pennsylvania and, upon information and belief, employs approximately 80 to 100 individuals.

7. On April 22, 2023, Ms. Poteat began working for RSR as a Property Manager.

8. Ms. Poteat is an African American woman.

9. Immediately upon beginning her employment with RSR, a senior employee, Barbara (last name unknown), began making racially discriminatory comments in front of Ms. Poteat.

10. Barbara made the following discriminatory comments:

    a. She stated that Hispanic people were "rude."

    b. She stated that African Americans fraudulently filled out apartment application documents.

    c. She made several discriminatory remarks about Indian people.

    d. She made frequent comments about Donald Trump in relation to immigration.

    e. She called Mexican women "fiery."

11. Ms. Poteat called General Manager, Mr. Polinsky to complain about Barbara's discriminatory comments on numerous occasions. In fact, Ms. Poteat called Mr. Polinsky in tears on more than one occasion.

12. Despite not holding a management position, Barbara would micromanage Ms. Poteat's work.

13. On May 11, 2023, Ms. Poteat emailed Mr. Polinsky and requested a meeting with him to discuss Barbara's comments.

14. During this meeting, Mr. Polinsky stated that Ms. Poteat was not the first individual to complain about Barbara's conduct.

15. Ms. Poteat requested to be put in contact with Human Resources; however, Mr. Polinsky told her that he would handle the situation himself.

16. Ms. Poteat provided Mr. Polinsky with a handwritten statement and he assured her that he would speak to Barbara about her inappropriate comments.

17. After Ms. Poteat's reports to Mr. Polinsky, Barbara became increasingly hostile to Ms. Poteat.

18. Barbara would constantly bring up Donald Trump in an attempt to harass Ms. Poteat.

19. Other employees observed Barbara's behavior, including, but not limited to, Carly Roth.

20. Ms. Poteat again complained to Mr. Polinsky about Barbara, to which he responded that Barbara would no longer be allowed to speak to Ms. Poteat.

21. Ms. Poteat again requested to speak to someone in Human Resources.

22. Mr. Polinsky told Ms. Poteat that he would have someone in Human Resources reach out to her; however, no one ever reached out to her.

23. On July 8, 2023, Ms. Poteat texted Mr. Polinsky stating that Barbara was being aggressive and demanding.

24. Mr. Polinsky then called Ms. Poteat on the office phone and told her to "hang in there."

25. Later, in another incident, Barbara began yelling at Ms. Poteat in front of Mr. Polinsky and Supervisor Heather Pool ("Ms. Pool"). However, no disciplinary action was taken against Barbara.

26. Ms. Poteat again asked Mr. Polinsky to put her in contact with Human Resources. He again failed to do so.

27. On October 2, 2023, Mr. Polinsky terminated Ms. Poteat's employment for being "late often."

28. Ms. Poteat had never been disciplined prior for tardiness and came into the office around the same time as everyone else every day.

29. No other employees were disciplined for tardiness.

30. Therefore, Mr. Polinsky terminated Ms. Poteat's employment due to her reports of racism.

## PARTICIPATION THEORY

31. The courts of this Commonwealth recognize the "participation theory," whereby, a corporate officer or representative who participates in wrongful, injury-producing conduct can be personally and individually liable while acting within the scope of their duty to the corporation. *See Loeffler v. McShane*, 539 A.2d 876 (Pa. Super. Ct. 1988); *Moy v. Schreiber Deed Sec. Co.*, 535 A.2d 1168 (Pa. Super. Ct. 1988); *Amabile v. Auto Kleen Car Wash*, 376 A.2d 247 (Pa. Super. Ct. 1977).

32. "Under the participation theory, the court imposes liability on the individual as an actor rather than as an owner. Such liability is not predicated on a finding that the corporation is a sham and a mere alter ego of the individual corporate officer." *Wicks v. Milzoco Builders, Inc.*, 470 A.2d 86, 90 (Pa. 1983). Liability will attach where the record establishes the corporate officer's

participation in the tortious activity. *Id.* "Thus, in order for liability to attach the officer must actually participate in wrongful acts." *Kaites v. Commonwealth, Dep't of Envtl. Res.*, 529 A.2d 1148, 1151 (Pa. Commw. Ct. 1987).

33. Further, the fact that a corporation may be vicariously or secondarily liable under the doctrine of respondeat superior does not relieve the individual of their responsibility. *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 606 (3d Cir. 1978) (citing *Zubik v. Zubik*, 384 F.2d 267, 275 (3d Cir. 1967)). "Such an action may exist even though the agent or officer derived no personal benefit, but acted on behalf, and in the name of, the corporation and the corporation alone was enriched by the act." *Shonberger v. Oswell*, 530 A.2d 112, 114 (Pa. Super. Ct. 1987) (citing *McDonald v. First Nat'l Bank*, 44 A.2d 265, 266 (Pa. 1945)).

34. Mr. Polinsky was a General Manager and acted within his capacity as an officer of the company in the commission of this intentional tort. Thus, he may properly be held personally liable, jointly and severally, in this action.

## COUNT I
## HOSTILE WORK ENVIRONMENT
## IN VIOLATION OF SECTION 1981

35. Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

36. To establish a Section 1981 claim alleging a hostile work environment based on race, a plaintiff must show that: "(1) the employee suffered intentional discrimination because of his/her race, (2) the discrimination was severe or pervasive, (3) the discrimination detrimentally affected the plaintiff, (4) the discrimination would detrimentally affect a reasonable person in like circumstances, and (5) the existence of respondeat superior liability, meaning the employer is responsible." *Castleberry v. STI Group*, 863 F.3d 259, 263 (3d Cir. 2017).

37. Ms. Poteat was an employee of RSR.

38. Ms. Poteat faced severe intentional discrimination at work because of her race. Specifically, she was forced to listen to racist language at her place of employment.

39. Ms. Poteat was detrimentally affected by the intentional discrimination, as any reasonable person would have been.

40. Following Ms. Poteat's reports of intentional discrimination, RSR retaliated against Ms. Poteat by terminating her employment.

41. Therefore, RSR permitted, condoned, and perpetuated the racially hostile work environment which Ms. Poteat was forced to endure, and therefore deprived her of the same right to make and enforce contracts as is enjoyed by white citizens, in violation of the Civil Rights Act of 1866, 42 U.S.C. §1981.

42. RSR's actions against Ms. Poteat were undertaken with reckless indifference to her federally protected right to make and enforce contracts irrespective of her race.

43. As a result of RSR' racial discrimination against Ms. Poteat, she has suffered and continues to suffer damages, including but not limited to lost wages and benefits, anxiety, loss of reputation, lost career opportunities, emotional distress, humiliation and inconvenience.

44. As set forth hereinabove, RSR's actions were intentional, knowing, wanton, willful and so outrageous as to shock the conscience, such that an award of punitive damages is warranted.

WHEREFORE, Ms. Poteat respectfully requests this Honorable Court to enter judgment in her favor and against Defendants, including an award of back pay, front pay, compensatory damages, punitive damages, costs and reasonable attorneys' fees, in addition to such other relief as deemed just and proper.

**COUNT II**
**RETALIATION**
**IN VIOLATION OF SECTION 1981**

45. Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

46. The Third Circuit has held that retaliation claims under Section 1981 are controlled by the three-step burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Canada v. Samuel Grossi & Sons*, 49 F.4th 340 (3rd Cir. 2022) (citing *CBOCS West, Inc. v. Humphries*, 553 U.S. 442 (2008) (holding that Section 1981 "encompasses claims of retaliation")).

47. Under the first step of that framework, a Plaintiff "must establish a prima facie case by showing '(1) [that he engaged in] protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action.'" *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015) (alteration in original) (quoting *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007)).

48. Upon making these showings, the employer then, under step two, has the burden of producing evidence that "present[s] a legitimate, non-retaliatory reason for having taken the adverse action." *Daniels*, 776 F.3d at 193. If the employer meets this burden, the burden then shifts "back to the Plaintiff to demonstrate that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action." *Id.* (Internal quotations omitted).

49. Ms. Poteat engaged in a protected activity under Section 1981 by reporting racially discriminatory comments by Barbara to Mr. Polinsky.

50. Despite Ms. Poteat's complaint of Barbara's racist conduct, no corrective action or investigation was carried out.

51. On October 2, 2023, Defendants terminated Ms. Poteat.

52. The temporal proximity of Ms. Poteat engaging in a protected activity and RSR's adverse employment actions against her, with no prior disciplinary action, demonstrated a retaliatory motive by RSR.

53. As a direct and proximate cause of the aforementioned conduct, Ms. Poteat suffered actual damages, including but not limited to, lost wages, benefits, emotional distress, anxiety, loss of reputation, loss of professional opportunities, humiliation and severe inconvenience, all in the past, present and future.

54. As set forth hereinabove, RSR's actions were intentional, knowing, wanton, reckless and so outrageous as to shock the conscience, such that an award of punitive damages is warranted.

WHEREFORE, Ms. Poteat respectfully requests this Honorable Court to enter judgment in her favor and against Defendants, including an award of back pay, front pay, compensatory damages, punitive damages, costs and reasonable attorneys' fees, in addition to such other relief as deemed just and proper.

Respectfully Submitted,

**J.P. WARD & ASSOCIATES, LLC**

Date: March 29, 2024    By: _____
Joshua P. Ward (Pa. I.D. No. 320347)

J.P. Ward & Associates, LLC
The Rubicon Building
201 South Highland Avenue
Suite 201
Pittsburgh, PA 15206
jward@jpward.com

*Counsel for Plaintiff*