IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

OCTAVIA POTEAT,

               *Plaintiff,*

   v.

CP DEVELOPMENT *doing business as*
REGENT SQUARE RENTALS *and* JAMES
POLINSKY,

             *Defendants.*

Civil Action No. 2:24-cv-482

Hon. William S. Stickman IV

## MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

      Plaintiff Octavia Poteat ("Poteat") brings this action against her former employer under 42 U.S.C. § 1981, which protects racial minorities from discrimination in the workplace. Defendants CP Development d/b/a Regent Square Rentals ("RSR") and James Polinsky ("Polinsky") (collectively, "Defendants") filed a motion to dismiss Poteat's amended complaint ("Amended Complaint"). (ECF No. 9). For the following reasons, the Court will grant Defendants' motion. It will deny Poteat's motion to file a second amended complaint. (ECF No. 19).

## I. STANDARD OF REVIEW

      A motion to dismiss filed under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all well-pleaded factual allegations as true and

view them in the light most favorable to a plaintiff. *See Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Although a court must accept the allegations in the complaint as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, the complaint's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true even if doubtful in fact. *Twombly*, 550 U.S. at 555. Facial plausibility is present when a plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Even if the complaint's well-pleaded facts lead to a plausible inference, that inference alone will not entitle a plaintiff to relief. *Id.* at 682. The complaint must support the inference with facts to plausibly justify that inferential leap. *Id.*

With respect to certain employment discrimination claims, a plaintiff need not plead the prima facie elements to survive a motion to dismiss. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (explaining that "under a notice pleading system, it is not appropriate to require a plaintiff to plead facts establishing a prima facie case" of employment discrimination as a prima facie case is an evidentiary standard, not a pleading requirement.). Rather, these claims require "facial plausibility," meaning that the allegations must state "enough facts to raise a reasonable expectation that discovery will reveal evidence of [the claim's] necessary element[s]." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016) (citation omitted);

*see also Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) ("The complaint need only allege enough facts to 'raise a reasonable expectation that discovery will reveal evidence of [each] necessary element.'" (citation omitted)).

## II.    FACTUAL BACKGROUND

RSR is a property management company that manages apartments in the Regent Square and Wilkinsburg areas of Pittsburgh, Pennsylvania.   On April 22, 2023, Poteat, an African American woman of Haitian nationality, began working for RSR as a property manager.   (ECF No. 7, p. 2).

A co-worker, Barbara Jacobs ("Jacobs"), made the following comments in the presence of Poteat when they were the only employees in the office:   (a) "that Hispanic people were 'rude'"; (b) "that African Americans, in her opinion, were more likely to fraudulently fill out apartment application documents"; (c) stating of "immigrants in our county," "I don't know where they're coming from, but they're all coming over. You know, those Indians or Arabs, whatever they are"; (d) dubbing Mexican women "fiery" and stating that "Mexicans are taking over our jobs"; (e) "look at Denzel, isn't he one of those beautiful black men?"; and (f) when watching a true crime documentary about missing people of color, stating "that would never happen in my neighborhood."   (*Id.* at 3).   Poteat called her manager, Polinsky, and complained about Jacobs's comments on numerous occasions.

On May 11, 2023, Poteat emailed Polinsky and requested a meeting to discuss Jacobs's comments.   (*Id.*).   During the ensuing meeting, Polinsky revealed that Poteat was not the first person to complain about Jacobs, and that six other employees had lodged complaints.   Poteat requested that Polinsky put her in contact with human resources.   Polinsky said he would handle

the matter and speak with Jacobs.    Poteat gave Polinsky a handwritten statement of her complaints.  (*Id.* at 4).

After Poteat's discussions with Polinsky, Jacobs became "increasingly hostile" toward Poteat, which prompted Poteat to lodge another complaint about Jacobs with Polinsky.  Polinsky told Poteat that Jacobs would no longer be allowed to speak to her.  When Poteat requested to speak to someone in human resources, Polinsky said he would have someone reach out to her.  (*Id.* at 4).

On July 8, 2023, Poteat texted Polinsky that Jacobs "was being aggressive and demanding."  Polinsky called Poteat and told her to "hang in there."  (*Id.* at 4).

On September 28, 2023, Jacobs inserted herself into a discussion that Poteat was having with Polinsky and Poteat's supervisor, Heather Pool ("Pool").  Jacobs "began yelling at [ ] Poteat to 'just do what they tell you.  If they are telling you to do something, it is for a reason.'"  (*Id.* at 5).  Poteat attempted to "speak up for herself," and Polinsky told Poteat and Jacobs "that they were both in the wrong."  After the incident, Poteat asked Polinsky to put her in touch with human resources.  (*Id.*).

On September 29, 2023, Poteat received a "final notice" from RSR "for her performance."  Poteat claims she had "never received prior warnings for her performance."  On October 29, 2023, Polinsky terminated Poteat's employment for "being 'late often.'"  (*Id.*).  Her termination came just days before she was to receive her signing bonus of $1,000.00.  (*Id.* at 5-6).  According to Poteat, she had never been disciplined for tardiness and she arrived at the same time as her coworkers every morning.  (*Id.* at 5).  Carly Roth ("Roth"), "a similarly situated white employee, was frequently tardy and often arrived at work after [ ] Poteat," and Poteat asserts that "Defendants never disciplined [ ] Roth for her tardiness."  (*Id.* at 6).

### III.   ANALYSIS

Section 1981 provides that:

> All persons within the jurisdiction of the United States shall have the same right
> in every State and Territory to make and enforce contracts ... and to the full and
> equal benefit of all laws ... as is enjoyed by white citizens ...

42 U.S.C. § 1981(a). It prohibits racial discrimination and retaliation against those who have

opposed such discrimination. *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 445 (2008).   To

state a § 1981 claim, a plaintiff must allege facts supporting an "intent to discriminate on the

basis of race by the defendant." *Brown v. Philip Morris*, 250 F.3d 789, 797 (3d Cir. 2001).

Poteat must "initially plead and ultimately prove that, but for race, [she] would not have suffered

the loss of a legally protected right." *Comcast Corp. v. Nat'l Assoc. of African American-Owned

Media*, 589 U.S. 327, 341 (2020).   For the following reasons, the Court finds that Poteat has not

come forth with averments in her Amended Complaint so as to assert plausible prima facie

claims of a hostile work environment or retaliation under § 1981.[1]

---

[1] In the absence of direct evidence, § 1981 employment hostile work environment and retaliation
claims are analyzed under the three-step burden-shifting test laid out in *McDonnell Douglas
Corp. v. Green*, 411 U.S. 792 (1973).   First, the plaintiff must meet the initial burden of
establishing a prima facie case of the elements for her claim. *Castleberry v. STI Grp.*, 863 F.3d
259, 263 (3d Cir. 2017) (citing *McDonnell Douglas*, 411 U.S. at 802).  If the plaintiff makes this
prima facie showing, the burden of production "'shift[s] to the employer to articulate some
legitimate, nondiscriminatory reason' for the adverse employment action."   *Id.* (quoting
*McDonnell Douglas*, 411 U.S. at 803). "The employer need not prove that the tendered reason
*actually* motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden
of proving intentional discrimination always rests with the plaintiff." *Fuentes v. Perskie*, 32 F.3d
759, 763 (3d Cir. 1994) (citing *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253, 254,
256 (1981) (emphasis in original)). The employer's responsibility to make a showing on this
second prong is a "relatively light burden." *Id.*  If the employer does so, the burden shifts back
to the plaintiff to establish "that the employer's stated reason for the adverse action was an
excuse, or pretext, for why the action was actually taken." *Castleberry*, 863 F.3d at 263 (citing
*McDonnell Douglas*, 411 U.S. at 804).  A plaintiff may generally demonstrate pretext by offering
rebuttal evidence "from which a factfinder could reasonably either (1) disbelieve the employer's
articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more
likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d

## A. Count I will be dismissed.

Poteat's first claim under § 1981 alleges a hostile work environment on the basis of race. A hostile work environment is one so "permeated with discriminatory intimidation, ridicule, and insult" that it becomes "abusive." *Nat'l R.R. Passenger Corp v. Morgan*, 536 U.S. 101, 116 (2002) (internal quotation marks omitted) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  To plead a § 1981 hostile work environment claim, Poteat must set forth sufficient factual allegations that 1) she suffered intentional discrimination because of her race, 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected her, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of *respondeat superior* liability (meaning the employer is responsible). *Castleberry*, 863 F.3d at 264 (citations omitted).  "The discriminatory conduct must be so extreme as to amount to a change in the terms and conditions of employment.  Unless they are extremely severe, offhand comments and isolated incidents are insufficient to sustain a hostile work environment claim." *Woodard v. PHB Die Casting*, 255 F. App'x 608, 609 (3d Cir. 2007) (citing *Caver v. City of Trenton*, 420 F.3d 243, 262 (3d Cir. 2005)).  Several factors are to be considered in analyzing a hostile work environment claim: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23.  This cause of action directs courts to "concentrate not on individual incidents, but on the overall scenario." *Qin v. Vertex, Inc.*, 100 F.4th 458, 471 (3d Cir. 2024) (quoting *Caver*, 420 F.3d at 262-63).

---

at 764 (citations omitted).  But at the motion to dismiss stage, Poteat does not have to meet the *McDonnell Douglas* standard.

Poteat alleges that she is African American and that Jacobs is Caucasian. This, standing alone, is insufficient to state a § 1981 claim. Poteat further alleges that Jacobs made offensive comments on a few occasions over the course of two months when she and Poteat were alone in the workplace. Poteat has not pled that Jacobs used racially oriented language specifically directed toward her, that Jacobs made racially insulting comments about her, that Jacobs taunted her because of her race, or that Jacobs displayed racially offensive materials to her. Not a single comment by Jacobs was about Poteat. Instead, Poteat pleads two instances of generalized offensive comments by Jacobs – (1) that Denzel Washington is "one of those beautiful black men" and (2) that there were a lot of immigrants from all over – "those Indians or Arabs, whatever they are." The other offensive comments that Jacobs allegedly made were (1) that Hispanic people were "rude," (2) that African Americans fraudulently filled out apartment application documents, (3) that Mexican women are "fiery," and (4) stating while watching a documentary about missing people of color "that would never happen in my neighborhood." (ECF No. 7, pp. 2-3). Viewing these comments in the light most favorable to Poteat, the Court finds that the only possibly racially discriminatory actionable comments were those about ethnic characteristics of African Americans – i.e., the comments about Denzel Washington, African Americans filling out fraudulent apartment applications, and crime not happening in certain neighborhoods.

Jacobs's comments about national origin are not covered by § 1981.[2] *See St. Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987). Additionally, as Defendants accurately note of the allegedly "aggressive and demanding" conduct of Jacobs in July 2023, and the verbal altercation between Poteat and Jacobs on September 28, 2023, "[r]ude behavior and

---

[2] Furthermore, nothing pled in the Amended Complaint indicates that Poteat, or RSR, had any knowledge that Poteat was of Haitian nationality.

disagreement ... do not meet the requirements to show a hostile work environment." (ECF No. 10, p. 8) (citation to authorities omitted). Even if Jacobs could be characterized as generally disagreeable in the workplace, her rude behavior and one-time disagreement with Poteat in front of their managers do not meet the requirements to show a hostile work environment. "[T]he vicissitudes of everyday life in the workplace do not rise to the level of a hostile work environment; something more is required." *Williams v. Pennsylvania Hum. Rel. Comm'n*, Civil Action No. 14-1290, 2016 WL 6834612, *24 (W.D. Pa. Nov. 21, 2016).

What Poteat has pled are offhanded comments and sporadic racially offensive comments by Jacobs that occurred over the course of Poteat's first two months of employment. But "[i]solated incidents and offhanded comments . . . are not sufficient to sustain a hostile work environment claim." *Stucke v. City of Phila.*, 685 F. App'x 150, 153 (3d Cir. 2017) (internal quotation marks and citation omitted). As pled, Poteat's workplace was not permeated with intimidation, ridicule, and insult. Jacobs's utterance of racial comments on a few occasions over the course of two months, which engendered offensive feelings in Poteat (who was a new employee), did not sufficiently affect (and alter) the conditions of Poteat's employment so as to implicate § 1981. Poteat had to come forth with more than a few isolated incidents of racial enmity. There is no evidence that anyone ever referred to Poteat using racial slurs. The statements of Jacobs which she considered offensive were not physically threatening or humiliating. Poteat did not face any sort of targeted, derogatory comments over a lengthy period of time, such that it affected her work performance. The conduct which Poteat describes is not sufficiently frequent, severe, or pervasive enough, as a matter of law, to rise to the level of a hostile work environment. *See Sherrod v. Phila. Gas Works*, 57 F. App'x 68, 75-77 (3d Cir. 2003) (finding insufficient evidence to establish a hostile work environment despite incidents

involving a manager referring to the alleged "culture" of African-American employees, indicating that he was "going to sit at their desks with a whip"; locating African-American employees' desks directly in front of their white supervisor's office window; excluding plaintiff from a meeting despite plaintiff's presentation being on the agenda; "snubbing" plaintiff with a turned back; and the management team screaming at and treating plaintiff badly). Finally, even if the conduct described had a detrimental effect on Poteat's mental health, the incidents would not have detrimentally affected a reasonable person in her position. Accordingly, the incidents pled are insufficient to create a racially hostile work environment as a matter of law. Count I will be dismissed with prejudice.

**B. Count II will be dismissed.**

The United States Court of Appeals for the Third Circuit instructs that "[i]n a retaliation case a plaintiff must demonstrate that there had been an underlying section 1981 violation." *Est. of Oliva ex rel. McHugh v. New Jersey*, 604 F.3d 788, 798 (3d Cir. 2010) (citing *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 451–53 (2008)). In doing so, a plaintiff "must have acted under a good faith, reasonable belief that a violation existed." *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015) (quotations omitted). Thus, in this circuit, a § 1981 retaliation claim is not viable without an underlying § 1981 discrimination claim. Here, the Amended Complaint does not contain a separate claim for racial discrimination. As noted in the previous section, Poteat has not proffered sufficient allegations to establish an underlying § 1981 hostile work environment violation. Thus, as her Amended Complaint fails to allege facts to support the requirement of an underlying § 1981 violation, her associated claim of retaliation is foreclosed.

Even if the Amended Complaint alleged facts to support an underlying § 1981 violation, it is devoid of facts establishing a plausible prima facie retaliation claim. Poteat's allegations are

too vague. For a successful prima facie retaliation claim, Poteat must establish that: (1) she engaged in protected activity; (2) her employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action. *Castleberry*, 863 F.3d at 267.

"To engage in 'protected activity' a plaintiff cannot complain about merely unfair treatment, rather they must complain about discrimination based on membership in a protected class." *McClain v. Avis Rent A Car Sys., Inc.*, 648 F. App'x 218, 224 (3d Cir. 2016) (citation omitted). Poteat states that her protected activity was that of "reporting racially discriminatory comments by Barbara to Mr. Polinsky." (ECF No. 7, p. 9). Her allegations are devoid of a single instance where she complained to Polinsky about any discriminatory comments regarding her race. As pled, none of Poteat's complaints to Polinsky explicitly or implicitly communicated a complaint about racial discrimination against her in the workplace. Complaints about "minor and isolated" workplace behavior that could not "remotely be considered extremely serious" is not protected activity under § 1981. *Kengerski v. Harper*, 6 F. 4th 531, 537 (3d Cir. 2021) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 271 (2001)). Informal complaints must allege discrimination based on a protected category. *See Daniels*, 776 F.3d at 193; *see also McClain*, 648 F. App'x at 224 ("To engage in 'protected activity' a plaintiff cannot complain about merely unfair treatment, rather they must complain about discrimination based on membership in a protected class." (citing *Barber v. CSX Distribution Servs.*, 68 F.3d 694, 701-02 (3d Cir. 1995)).

Additionally, the Amended Complaint does not set forth a causal link between Poteat's complaints about Jacobs and being firing. While a plaintiff eventually must "prove that retaliatory animus was the 'but-for' cause of the adverse employment action," in proving the

*prima facie* case, she merely "must produce evidence 'sufficient to raise the inference that her protected activity was the likely reason for the adverse [employment] action.'" *Carvalho-Grevious v. Delaware State Univ.*, 851 F.3d 249, 258-59 (3d Cir. 2017) (quotation omitted). The "temporal proximity" between the protected activity and adverse employment action can be "unusually suggestive" evidence of causation. *Moody v. Atlantic City Bd. of Educ.*, 870 F.3d 206, 221 (3d Cir. 2017) (quotation omitted); *see also Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279-80 (3d Cir. 2000). Alternately, a plaintiff can prove causation by showing "a pattern of antagonism coupled with timing" suggestive of retaliation. *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). These are not the only means available to the plaintiff, as causation is "gleaned from the record as a whole." *Farrell*, 206 F.3d at 281.

The Court finds temporal proximity lacking between Poteat's protected activity and her firing. She complained about Jacobs's comments between April 22, 2023 and May 11, 2023. (ECF No. 7, pp. 2-4). RSR fired Poteat on October 2, 2023. (*Id.* at 7). The five month gap between the protected activity and adverse employment action causes the inference to "dissipate." *See Moody*, 870 F.3d at 221 ("an inference of 'unduly suggestive' temporal proximity begins to dissipate where there is a gap of three months or more between the protected activity and the adverse action." (citing *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007)). Furthermore, nothing alleged demonstrates a pattern of antagonism. No coworkers, including Jacobs, or managers made any remarks to or mistreated Poteat because she complained about Jacobs's statements. There are no allegations that Poteat was treated differently because of her complaints. Her duties remained the same and there are no allegations that she was assigned more responsibilities or received unfavorable performance reviews. In sum, Poteat has proffered insufficient evidence to establish a causal connection.

Count II will be dismissed with prejudice.

**C. Further amendment is futile.**

Poteat has already amended her complaint once.  On November 18, 2024, more than three months after briefing concluded on August 1, 2024, and the motion to dismiss was under advisement with the Court, Poteat filed a Motion for Leave to Modify Schedule and File Plaintiff's Amended Complaint.  (ECF No. 19).  She now wishes to add hostile work environment and retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.  On August 23, 2024, the Equal Employment Opportunity Commission issued a Notice of Right to Sue as to Poteat's Title VII claims.  Poteat fails to explain why she waited more than three months to request leave to amend.  Nevertheless, the Court has examined her proposed Second Amended Complaint in Civil Action (ECF No. 19-1), and finds that the factual allegations set forth in paragraphs 6 through 38 remain the same as those set forth in the Amended Complaint.  (ECF No. 7, pp. 2-5).  It will deny her leave to amend as it finds amendment would be futile.  *See* 3 James Wm. Moore et al., Moore's Federal Practice ¶ 15.15 (3d ed. 2024) ("An amendment is futile if it merely restates the same facts as the original complaint in different terms, reasserts a claim on which the court previously ruled, fails to state a legal theory, or could not withstand a motion to dismiss.").  In employment discrimination cases, 1981 claims are subject to the same analysis as discrimination claims under Title VII.  *Brown v. J. Kaz, Inc.*, 581 F.3d 175, 181-82 (3d Cir. 2009); *see also Castleberry*, 863 F.3d at 263.  The Third Circuit has stated, "the ADA, ADEA and Title VII all serve the same purpose—to prohibit discrimination in employment against members of certain classes.  Therefore, it follows that the methods and manner of proof under one statute should inform the standards under the others as well." *Newman v. GHS Osteopathic, Inc.*, 60 F.3d 153, 157 (3d Cir. 1995).  The proposed claims

Poteat wishes to bring under Title VII (ECF No. 19-1, pp. 11-14) fail for the reasons already set forth herein.  Leave to amend will be denied.

## IV.     CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss will be granted.  Poteat's motion for leave to file a second amended complaint will be denied.  Orders of Court will follow.

BY THE COURT:

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

11/21/24
Date